SUGARLOAF FUND LLC, JETSTREAM BUSINESS LIMITED, TAX
MATTERS PARTNER, PETITIONER *v*. COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT

Docket No. 671–10.　　　　Filed September 5, 2013.

In 2005, S, a purported partnership, set up Illinois common
law business trusts Main Trust and Sub-Trust. S then trans-
ferred distressed Brazilian consumer receivables to Main
Trust. S, Main Trust, and the trustee in turn allocated the
receivables to Sub-Trust. E transferred cash to Main Trust in
exchange for the entire beneficial interest in Sub-Trust. E
wrote off most of the value of the receivables as an I.R.C. sec.
166 bad debt deduction, claiming a carryover basis in the
receivables equal to S' basis. R issued a notice of final part-
nership administrative adjustment regarding S' 2004 and
2005 taxable years. R made adjustments to S' income on a
number of theories. One theory is that S' basis in the receiv-
ables was zero. An extension of this theory is that E's basis
in the receivables is a carryover basis and would also be zero.
R made such a determination and issued E a statutory notice
of deficiency denying the deduction. E did not petition this
Court for review of his individual income tax liability. E now
alleges he, as the beneficiary and grantor of Sub-Trust, is a
partner of S such that he may intervene and participate as a
party in this TEFRA proceeding on the grounds that Sub-
Trust's basis in the receivables is a partnership item of S.
*Held*: E is not a direct or indirect partner in S.

214

John E. Rogers (an officer), for petitioner.

*Joseph A. DiRuzzo III*, for participating partner Timothy J. Elmes.

*Ronald S. Collins, Jr.*, for respondent.

OPINION

WHERRY, *Judge*: The petition in this case was filed by Jetstream Business Limited (Jetstream) as tax matters partner for Sugarloaf Fund, LLC (Sugarloaf), on January 8, 2010. On July 12, 2012, Timothy J. Elmes filed an election to participate in this case pursuant to section 6226(c).[1] On July 19, 2012, Mr. Elmes filed a motion requesting that the Court stay consolidation of this case with other transactionally related cases. On July 30, 2012, Mr. Elmes filed a motion requesting a determination that he is a partner of Sugarloaf. The Court invited petitioner and respondent to file responses to Mr. Elmes' motions. Respondent on April 11, 2013, filed a response contending that Mr. Elmes is not a partner of Sugarloaf. Petitioner did not file a response. On April 17, 2013, we denied Mr. Elmes' motions to stay consolidation and to set the partner determination issue for oral argument and set a briefing schedule. We also denied without prejudice Mr. Elmes' motion for a partner determination, believing resolution of the issue was unnecessary at the time. On May 16, 2013, Mr. Elmes filed a motion to compel discovery from petitioner. We directed petitioner to file a response, which it did not do. Mr. Elmes then moved on June 12, 2013, for an order to show cause why the Court should not hold petitioner in contempt for its failure to file a response.

This Court has for some time, even predating Mr. Elmes' attempt to intervene in this case, been concerned as to whether "individual U.S. investors who claimed to have purchased ownership interests in the Holding Companies as well as those who acquired beneficial interests in the Sub-Trusts" had "the right to participate in these partnership-level proceedings". This Court's order dated April 17, 2012, discussed these issues in some detail and directed the parties to file briefs addressing these issues. Both petitioner and respondent have, in response to the Court's order, filed briefs

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended and in effect for the tax years at issue.

addressing these issues. After careful consideration, we have concluded that Mr. Elmes is not a direct or an indirect partner in Sugarloaf within the meaning of section 6226(c) or 6231(a)(2). Consequently, he may not participate in this case, and we will deny his outstanding motions as moot for the reasons discussed below.

## *Background*

For the sole purpose of deciding this issue, we draw the following background information from the agreed-upon allegations in the pleadings and from the uncontroverted statements in the motions and in the accompanying memoranda, including exhibits thereto.

This case is a partnership-level proceeding under the unified audit and litigation provisions of the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. No. 97–248, sec. 402(a), 96 Stat. at 648, commonly referred to as TEFRA and currently codified at sections 6221 through 6234. Sugarloaf is an Illinois limited liability company and has filed tax returns as a partnership under the default classification rules. *See* sec. 301.7701–3(a) and (b)(1)(i), Proced. & Admin. Regs. One or more Brazilian companies allegedly contributed uncollected and overdue consumer receivables to Sugarloaf in exchange for a 98% interest in Sugarloaf. Warwick Trading, LLC (Warwick), and Jetstream owned the remaining 2% interest in Sugarloaf.

Sugarloaf claims to have contributed some of the Brazilian consumer receivables to "Illinois common law business trusts" (main trusts). Then, these main trusts purportedly formed sub-trusts and assigned a portion of the receivables to these sub-trusts, which, according to petitioner, operated to hold, preserve, and delegate collections of the receivables. Investors would contribute cash to a main trust in exchange for an interest in that main trust and the entire beneficial interest in a specified sub-trust. Mr. Elmes was apparently one of these investors. The investors in these sub-trusts reported on their individual tax returns section 166 bad debt deductions relating to the consumer receivables. The Commissioner has denied the claimed deductions and determined income tax deficiencies and penalties against many of the investors.

Sugarloaf formed the Elmes 2005 Trust (Elmes Main Trust) and the Elmes 2005–A Sub-Trust (Elmes Sub-Trust) and was the initial grantor and beneficiary. Sugarloaf then purportedly transferred receivables to Elmes Main Trust, which then purportedly allocated those receivables to Elmes Sub-Trust. John Rogers, the strategist behind these transactions, was the trustee of both trusts. Mr. Elmes contributed $75,000 to Elmes Main Trust in exchange for an interest in Elmes Main Trust and the entire beneficial interest in Elmes Sub-Trust and claimed to be the grantor of Elmes Sub-Trust. Sugarloaf, Mr. Elmes, and the trusts treated the Brazilian receivables as having a carryover basis. Elmes Sub-Trust reported a business bad debt deduction of $1,455,000 on account of the partial worthlessness of the Brazilian receivables. Mr. Elmes, as a purported grantor of Elmes Sub-Trust, claimed this deduction on his 2005 tax return.

Respondent disallowed the loss deduction on a number of grounds and determined an income tax deficiency and a penalty against Mr. Elmes for which a statutory notice of deficiency was issued. According to respondent and to this Court's records, Mr. Elmes did not petition this Court for review of that statutory notice of deficiency, and respondent assessed the deficiency.[2] Mr. Elmes is now seeking to litigate his deficiency indirectly by participating in this case.

To support this belated attempt, Mr. Elmes relies on language used in the previously mentioned order dated April 17, 2012, that we issued both in this case and a number of transactionally related cases. In that order we requested briefs on whether the beneficial owners of trusts similar to the Elmes Main Trust and the Elmes Sub-Trust should be considered partners of Sugarloaf. Both respondent and petitioner in this case responded in the negative, as did the petitioners in a number of transactionally related cases. Mr. Elmes, however, filed a protective election to participate in this case, although he has no separate case of his own, and further filed a motion contending that he should be treated

[2] As a general matter, while Congress has sought to afford taxpayers a prepayment forum to dispute the Commissioner's determined Federal income tax deficiencies, it has also indicated that this opportunity should be afforded only once as to any determined income tax deficiency for any specified taxable year. *See generally* secs. 6320(c), 6330(c)(2)(B).

as a partner of Sugarloaf, which, if true, would justify his participation.

Our April 17, 2012, order hypothesized that if Sugarloaf's basis in the receivables was a partnership item of Sugarloaf and the main trust's and sub-trust's basis in the receivables was a carryover basis, then the sub-trust's basis in the receivables would likely be controlled by our finding as to Sugarloaf's basis in the receivables. As we stated in that order: "Consequently, an individual U.S. investor who claimed a beneficial interest in a Sub-trust would seem to have his Federal income tax liability 'determined in whole or [in] part by taking into account directly or indirectly [Sugarloaf's basis in these partnership assets, which are] partnership items of the partnership.' Sec. 6231(a)(2)."

## *Discussion*

Generally when the tax matters partner or other partner petitions this Court for readjustment of items in a notice of final partnership administrative adjustment (FPAA), each partner who was a partner during the partnership taxable year at issue may participate in the proceeding. Sec. 6226(c). A partner seeking to participate under section 6226(c) must have an interest in the outcome. Sec. 6226(d). Thus, for Mr. Elmes to participate in this proceeding, he must have been a partner in Sugarloaf at some time during the 2005 taxable year of Sugarloaf, which is at issue in this case. *See* sec. 6226(c)(1).

Section 6231(a)(2) defines a partner for TEFRA purposes not just as a "partner in the partnership" but also as "any other person whose income tax liability * * * is determined in whole or in part by taking into account directly or indirectly partnership items of the partnership." A partnership item is "any item required to be taken into account for the partnership's taxable year under any provision of subtitle A to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level." Sec. 6231(a)(3). The regulations include as partnership items "amounts determinable at the partnership level with respect to partnership assets". Sec. 301.6231(a)(3)–1(a)(1)(vi), Proced. & Admin. Regs.

The records of Sugarloaf for 2005 do not indicate that Mr. Elmes was a direct partner in Sugarloaf under section 6231(a)(2)(A). Nevertheless, in support of his position that he was a partner in Sugarloaf in 2005, Mr. Elmes submitted Schedules K–1, Partner's Share of Income, Deductions, Credits, etc., for the 2007 and 2008 tax years. These documents suggest that as the result of the alleged dissolution of at least some of the trading companies and liquidation of the trusts, both of which petitioner alleges have occurred, Mr. Elmes may have become a partner or indirect partner in Sugarloaf in 2007 and 2008. Without deciding the authenticity or significance of these Schedules K–1, we note that Mr. Elmes has not provided a similar document for the 2005 tax year, which is the year at issue in this case. Nor does Mr. Elmes contend he or his trusts banded together with the Brazilian retailers, Warwick, and Jetstream to jointly conduct, through the Sugarloaf partnership, a common undertaking. [3] *See Commissioner v. Culbertson*, 337 U.S. 733 (1949). Therefore, Mr. Elmes has not demonstrated that either he or the Elmes Sub-Trust was a direct partner of Sugarloaf for 2005. Thus, in order for Mr. Elmes to participate in this case, he must be a "person whose income tax liability [for 2005] * * * is determined in whole or in part by taking into account directly or indirectly partnership items of the partnership." Sec. 6231(a)(2)(B).

Section 6231(a)(2)(B) brings within the definition of partner certain persons who are liable or jointly and severally liable for a tax liability attributable to partnership items. For example, a spouse may be a deemed partner if the other spouse is a partner and they file jointly or if the spouse, by operation of State law, has a joint interest in the partnership interest. *See Callaway v. Commissioner*, 231 F.3d 106, 111 (2d Cir. 2000), *rev'g* T.C. Memo. 1998–99. In addition, a common parent corporation of a consolidated

---

[3] We also acknowledge that the so-called check-the-box regulation, sec. 301.7701–3(a), Proced. & Admin. Regs., permits "[a]n eligible entity with at least two members * * * [to] elect to be classified as * * * a partnership". But neither Mr. Elmes nor the Elmes Sub-Trust ever came together with Sugarloaf or any of its partners to constitute an entity for this purpose. *See generally Superior Trading, LLC v. Commissioner*, T.C. Memo. 2012–110, slip. op. at 11–15, *supplementing* 137 T.C. 70 (2011), *aff'd*, 728 F.3d 676 (7th Cir. 2013).

group may be a partner when a subsidiary member of the group is a partner in the partnership, because the common parent and each subsidiary member of the common group is severally liable for tax computed under section 1502. Rev. Rul. 2006–11, 2006–1 C.B. 635. [4] Indirect partners under section 6231(a)(10), which are "person[s] holding an interest in a partnership through 1 or more pass-thru partners", are also deemed partners under section 6231(a)(2)(B). *PCMG Trading Partners XX, L.P. v. Commissioner*, 131 T.C. 206, 209–210 (2008). While the definition of a "pass-thru partner" includes a trust through which "other persons hold an interest in the partnership", sec. 6231(a)(9), neither Elmes Main Trust nor Elmes Sub-Trust had such an interest in Sugarloaf. [5]

Mr. Elmes contends, however, that he is a partner in Sugarloaf by virtue of his status as grantor of Elmes Sub-Trust. Specifically, he contends:

> In *Dionne v. Commissioner*, T.C. Memo. 1993–117, the Court held that the petitioner fell within the ambit of Section 6231(a)(2) because he was a shareholder of a S–Corporation, a pass-through entity. The S–Corporation was a partner in a TEFRA partnership, and the Court concluded that the "petitioner's income tax liability as stockholder in the S–Corporation [was] clearly determined by taking into account, indirectly, partnership items of the partnership..." *Id.* Thus, under Section 6231(a)(2)(B), the petitioner was deemed a partner of the partnership. *Id.* Like the petitioner's ownership in the S–Corporation in *Dionne*, Elmes is the grantor of 2005 Elmes Subtrust, a passthrough entity. * * * The 2005 Elmes Subtrust, in turn, has a partnership interest in

---

[4] The mere fact that the subsidiary member is a partner in a partnership does not make the common parent a partner in the partnership. Rev. Rul. 2006–11, 2006–1 C.B. 635. Rather, it is the several liability that requires the common parent to be treated as a partner in the partnership for TEFRA partnership proceedings, but only to the extent that the liability stems from a partnership item. *Id.*

[5] It is not clear that Elmes Sub-Trust would fall within the definition of a "pass-thru" partner because, as a grantor trust, it may be treated as a disregarded entity for Federal income tax purposes. Secs. 671–679; *cf. Samueli v. Commissioner*, 132 T.C. 37, 39 n.3 (2009) (discussing a grantor trust as a disregarded entity such that the grantor is treated as the owner of what the trust owns), *aff'd in part and remanded on another issue*, 661 F.3d 399 (9th Cir. 2011). If this were the case, Mr. Elmes would own whatever Elmes Sub-Trust owned for Federal income tax purposes, including any partnership interest in Sugarloaf. But because Elmes Sub-Trust did not own a partnership interest in Sugarloaf in 2005, this avenue is also a dead end for Mr. Elmes.

SUGARLOAF. As a result, under Section 6231(a)(2)(B), Elmes is considered a deemed partner of SUGARLOAF. [Fn. ref. omitted.]

The problem with this argument is that in *Dionne*, the S corporation had an interest in the partnership, whereas here, Elmes Sub-Trust has no such interest.

We have discussed above some of the circumstances under which a taxpayer is deemed a partner under section 6231(a)(2)(B). Mr. Elmes, however, takes a different tack and claims that he is a partner of Sugarloaf under section 6231(a)(2)(B) because his income tax liability depends in part on the trust's basis in the receivables, which he contends depends on Sugarloaf's basis in those same receivables. Mr. Elmes is correct that the basis of the receivables is a partnership item of Sugarloaf. *See Superior Trading, LLC v. Commissioner*, 137 T.C. 70, 91 n.20 (2011) (involving a tiered partnership structure that was allegedly set up for servicing Brazilian receivables, holding that "[e]ach partnership's basis in the receivables is part of that partnership's inside basis and is therefore a 'partnership item' within the meaning of sec. 6231(a)(3) and sec. 301.6231(a)(3)–1, Income Tax Regs."), *supplemented by* T.C. Memo. 2012–110, *aff'd*, 728 F.3d 676 (7th Cir. 2013).

The gist of Mr. Elmes' argument appears to be that any adjustment to Sugarloaf's basis in the receivables determined by respondent or this Court would necessarily affect the amount of the bad debt deduction to which Mr. Elmes is entitled on his individual income tax return. This would occur because under section 1015(b) the basis of the receivables in the hands of the transferee trust must be the same as the basis of those receivables in the hands of transferor Sugarloaf.

This argument depends on the fact that the receivables were transferred from Sugarloaf to Elmes Main Trust and then allocated to Elmes Sub-Trust, but does not depend on any legal relationship among Mr. Elmes, the trusts, and the partnership Sugarloaf for purposes of income taxation. We also note that if the argument were correct, then any trust to which a partnership transferred assets would be a member of that partnership. We do not believe that a trust is necessarily a partner of a partnership merely because the trust

received assets from that partnership, and we do not accept Mr. Elmes' expansive interpretation of section 6231(a)(2)(B).

In support of his position that he should be considered a partner of Sugarloaf, Mr. Elmes cites our Supplemental Memorandum Opinion, *Superior Trading, LLC v. Commissioner*, T.C. Memo. 2012–110. In *Superior Trading*, the taxpayers contended that a Brazilian retailer contributed distressed consumer receivables to Warwick, which then contributed the receivables to a series of trading companies. Warwick then contributed most of its interest in those trading companies to various holding companies. Warwick then sold a supermajority interest in the holding companies to investors, who claimed substantial bad debt deductions. Respondent issued FPAAs to both Warwick and the trading companies. In those FPAAs respondent took several alternative positions, including that the receivables had no value even before they were transferred to Warwick.

Warwick and most of the trading companies filed petitions with this Court. Warwick's petition was consolidated with some, but not all, of the trading companies' petitions. After trial of those consolidated cases, we found for respondent on each of his alternative theories, including the theory that the receivables had no value.

In our Supplemental Memorandum Opinion on petitioners' motion for reconsideration, before addressing again each of respondent's alternative theories, we discussed the investors who had acquired ownership interests in the holding companies. After quoting section 6231(a)(2)(B), we stated that "to the extent their income tax liability is affected by the basis of the * * * [distressed consumer] receivables, a partnership item in these partnership-level proceedings, these investors are partners for purposes of these proceedings. Consequently, pursuant to section 6226(c)(1), each such investor 'shall be treated as a party to such action'." *Id.*, slip op. at 9.

*Superior Trading* did involve a Sugarloaf-type entity (Warwick), but Warwick's proceeding had been consolidated for trial and opinion with the trading companies' TEFRA proceedings. Our holding in the consolidated cases that the receivables' basis was zero was a factual and legal determination of a partnership item not just for Warwick, but also for the trading companies that were also involved in the case. Unlike Mr. Elmes, the investors, each of whom owned an

interest in a trading company through one or more pass-through partners, were indirect partners of the trading companies under section 6231(a)(10) and therefore were bound by our decision as to partnership items of the trading companies, particularly the basis of the receivables owned by their particular trading company. [6] Our conclusion that the investors were partners for purposes of the consolidated *Superior Trading* proceeding was correct on the basis of the legal relationship between the investors and the trading companies, rather than on the transferor/transferee relationship between Warwick and the trading companies. Mr. Elmes' reliance on the language in *Superior Trading* as support for his contention that he is a partner of Sugarloaf is misplaced.

Mr. Elmes does not cite caselaw, other than *Superior Trading* and *Dionne*, discussed *supra*, to support his expanded definition of partner for a TEFRA proceeding. But, the Court of Appeals for the Seventh Circuit, to which this case appears to be appealable absent stipulation to the contrary, has provided some guidance in this realm, and it is contrary to Mr. Elmes' position. *Cemco Investors, LLC v. United States*, 515 F.3d 749 (7th Cir. 2008). *Cemco Investors* involved three entities: a trust, a partnership, and the taxpayer (Cemco), a limited liability company treated as a partnership for Federal income tax purposes. *Id.* at 750. The trust entered into two-week-long offsetting short and long option contracts with a bank and then contributed those options to the partnership. *Id.* The partnership purchased euro and terminated the option contracts the next day. *Id.* The partnership then liquidated, transferring its assets, both dollars and euro, to the trust. *Id.* The trust turned around and contributed the euro to Cemco, which then sold them. *Id.* Cemco claimed a loss on this sale on the grounds that it took a carryover basis from the trust, which allegedly had an increased basis in the euro equal to the full amount of the long option. *Id.* at 750–751.

One of Cemco's arguments in its challenge to the FPAA was that the Commissioner should have first issued an FPAA

---

[6] Our decision regarding basis did not necessarily bind those trading company partnerships (and their partners) whose cases had not been consolidated.

to the partnership because the adjustment to Cemco's basis in the euro depended on the partnership's basis in the euro. *Id.* at 752–753. The Court of Appeals rejected this argument: "Cemco has never been a partner of the Partnership or the Trust. These sections of the Code [sections 6221 through 6234] therefore do not link the tax treatment of the euros in Cemco's hands to their tax treatment in anyone else's." *Id.* at 753.

By analogy, Mr. Elmes has never been a partner in Sugarloaf. The TEFRA provisions do not require that the tax treatment of the receivables in Mr. Elmes' hands match their treatment in Sugarloaf's hands. While consistency of treatment in the two parties' hands would be ideal, and many related cases are consolidated with this one in part for that purpose, nothing in the TEFRA provisions requires this. *See id.* ("[T]he IRS need not ensure consistent tax treatment unless a statute so requires. Sections 6221 to 6234 don't require this because Cemco is not an investor in the Partnership."). Because Mr. Elmes is not a partner, direct or indirect, in Sugarloaf, he has no standing to participate in this TEFRA proceeding.

We have considered all of Mr. Elmes' contentions, arguments, requests, and statements. To the extent not discussed herein, we conclude that they are meritless, moot, or irrelevant. To reflect the foregoing,

*An appropriate order will be issued.*